UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

HOMELAND INSURANCE COMPANY OF         CASE NO.:
NEW YORK, a foreign corporation,

    Plaintiff,

vs.

VALERIE SFREDDO and JOSEPH
SFREDDO, and HIPPOCRATES HEALTH
INSTITUTE OF FLORIDA, INC.

    Defendants.
_____/

## COMPLAINT FOR DECLARATORY RELIEF

The Plaintiff, HOMELAND INSURANCE COMPANY OF NEW YORK ("Homeland") sues the Defendants, VALERIE SFREDDO and JOSEPH SFREDDO (collectively "Sfreddo" or individually as "Valerie and Joseph Sfreddo") and HIPPOCRATES HEALTH INSTITUTE OF FLORIDA, INC. ("Hippocrates"), for declaratory relief as follows:

### NATURE OF ACTION

1. This is an action for declaratory relief filed by Homeland against Sfreddo and Hippocrates.

### JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. §1332.

3. The amount in controversy exceeds $75,000, exclusive of interest attorney's fees and costs, as alleged herein.

4. Venue is proper in the Southern District of Florida as Homeland entered into a contract of insurance with Homeland and Valerie Sfreddo received H-wave electrical treatment at Hippocrates in this district.

5. All conditions precedent to instituting this action have occurred, been performed, or have been waived.

## THE PARTIES

6. The Plaintiff, Homeland, is a foreign corporation, incorporated under the laws of New York, with its principal place of business in Massachusetts.

7. The Defendants Sfreddo are citizens of the State of Florida residing in West Palm Beach, Florida.

8. The Defendant Hippocrates, is a Florida corporation with its principal place of business in Palm Beach County, Florida..

## COMMON ALLEGATIONS

9. Between March 8, 2009 and March 28, 2009, Valeria Sfreddo received treatment at Hippocrates, including, but not limited to, H-Wave electrical stimulation.

10. The Sfreddos sent a series of communications to Hippocrates advising Hippocrates that they intended to hold it responsible for alleged errors or omissions based upon Valerie Sfreddo's treatment and/or placing Hippocrates on reasonable notice that their treatment of Valeria Sfreddo might result in a claim prior to July 14, 2009.

11. In order to obtain insurance coverage for Hippocrates, it completed an application for insurance on May 5, 2009. A copy of its application submitted to Shand Morahan, which was relied upon by Homeland in issuing its policy is attached as Exhibit A.

12. The application submitted for coverage asked the following questions:

> 2. Has any claim or suit for malpractice ever been made against the Applicant or any person proposed for this insurance?.................................................( ) Yes (X) No
> If Yes, how many?_____

3.   Has any claim or suit for malpractice ever been made against the Applicant or any person proposed for this insurance that has not been reported to the Applicant's current   or   prior insurer?..................................................................( ) Yes (X) No
If Yes, explain _____

4.   Is the Applicant or any person proposed for the insurance aware of any act, error, omission, fact, circumstance, or records request from any attorney which may result in a malpractice claim or suit?.................................................................( ) Yes (X) No
If Yes, how many?_____

13.   In reliance on the information contained in the application, Homeland issued a policy of insurance to Hippocrates, Policy No. MFL-0095-09. This was the first policy of insurance issued by Homeland to Hippocrates. A copy of the policy is attached as Exhibit B.

14.   The Homeland policy contains the following relevant provisions:

**I.   INSURING AGREEMENTS**

(A)   **Claims Made Professional Liability Insurance:**

The Underwriter will pay up to the applicable Limit of Liability shown in ITEM 4.A. of the Declarations on behalf of the **Insured** any **Loss** that the **Insured** is legally obligated to pay as a result of any covered **Claim** for a **Professional Services Wrongful Act** happening on or after the **Retroactive Date**; provided, that the **Claim** is first made against the **Insured** during the **Policy Period** or applicable Extended Reporting Period and reported to the Underwriter in accordance with GENERAL CONDITION (C) of this Policy.
\* \* \*

E.   "**Claim**" means any written notice received by an **Insured** that any person or entity intends to hold an **Insured** responsible for a **Wrongful Act** or an **Occurrence**.
\* \* \*

3

14505916v1  0917527  54832

    II.    **"Professional Services Wrongful Act"** means:

        (1)    any actual or alleged act, error or omission, or series of acts, errors or omissions, by an **Insured** in rendering, or failing to render, **Professional Services**; or

        (2)    any actual or alleged act, error or omission, or series of acts, errors or omissions, by any person other than an **Insured** in rendering, or failing to render, **Medical Services**, but only for an **Insured's** vicarious liability with regard to such **Medical Services**. In no event shall this Policy provide coverage for the direct liability of any person other than an **Insured** for the rendering of, or failure to render, **Medical Services**.

* * *

(OO)    **"Wrongful Act"** means any **Professional Services Wrongful Act or Employee Benefit Wrongful Act**.

    III.    **EXCLUSIONS**

        (D)    **Exclusions Applicable to All INSURING AGREEMENT:**

Except as otherwise expressly provided in this Policy, this Policy does not apply to, and the Underwriter will not pay **Loss** or **Defense Expenses**, for any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequences of, or in any way involving any actual or alleged:

(1)    act, error, omission or **Wrongful Act** if any **Insured**, on or before the Inception Date set forth in ITEM 2 of the Declarations, knew or reasonably could have foreseen that such act, error, omission or **Wrongful Act** might result in a **Claim**.

If, however, this Policy is a renewal of one or more policies previously issued by the Underwriter to the **First Named Insured**, and the coverage provided by the Underwriter to the **First Named Insured** was in effect, without interruption, for the entire time between the inception date of the first such other policy and the Inception Date of this Policy, the reference in this EXCLUSION (D)(1) to the Inception Date will be deemed to refer instead to the inception date of the first policy under which the Underwriter began to provide the **First Named Insured** with the continuous and uninterrupted coverage of which this Policy is a renewal.

    15.    Less than one week after the Homeland policy was in effect and without receiving any additional information from the Sfreddos, Hippocrates first tendered the Sfreddo claim on July 21, 2009 to Homeland.

16. In their claim the Sfreddos are seeking in excess of $75,000 in damages, not including attorney's fees interest and costs from Hippocrates.

17. Homeland has offered to provide a defense to Hippocrates as a result of the Sfreddo claim.

18. As a result, Homestead has and will continue to incur damages in the form of attorney's fees in providing that defense.

### Count I - No Coverage Based Upon the Material Misrepresentations in the Application

19. Homeland realleges paragraphs 1 through 18 as paragraph 19 of Count I.

20. In its application Hippocrates' failed to disclose the Sfreddo claim and/or potential claim.

21. Hippocrates misrepresentations in the application were material to Homeland's decision to enter into the insurance contract with Hippocrates.

22. If Hippocrates had accurately completed the application and Homeland had known the truth, Homeland would not have entered into the insurance contract, would have entered into the contract at a higher premium, or would have entered into the contract under different terms.

23. Accordingly, Homeland is entitled to deny coverage based upon the material misrepresentations in the application.

24. In view of the foregoing, and actual controversy exists between the parties and by the terms and provisions of 28 U.S.C. §2201, this Court has the power to declare the rights and liabilities of parties and to give such other relief as may be necessary.

WHEREFORE, Homeland respectfully requests this Court to:

(a) Take jurisdiction of this matter and determine and adjudicate the rights and liabilities of the parties with respect to the Homeland policy;

(b) Find and declare that Homeland has neither a duty to defend or duty to indemnify Hippocrates as a result of the Sfreddo suit based upon the material misrepresentations in the application; and

(c) Grant Homeland the costs of this action and any such other further relief as this Court deems equitable, just and proper under the evidence and circumstances.

### Count II – No Coverage as the Claim Was Not First Made and Reported During the Policy Period

25. Homeland realleges paragraphs 1 through 18 as paragraph 25 of Count II.

26. The Homeland policy does not afford coverage as the Sfreddo's asserted a claim against Hippocrates that was not first made against Hippocrates during the policy period and reported to Homeland in accordance with the conditions of the Homeland policy.

27. In view of the foregoing, and actual controversy exists between the parties and by the terms and provisions of 28 U.S.C. §2201, this Court has the power to declare the rights and liabilities of parties and to give such other relief as may be necessary.

WHEREFORE, Homeland respectfully requests this Court to:

(a) Take jurisdiction of this matter and determine and adjudicate the rights and liabilities of the parties with respect to the Homeland policy;

(b) Find and declare that Homeland has neither a duty to defend or duty to indemnify Hippocrates for the Sfreddo claim;

(c) Grant Homeland such other relief as this Court deems fit and proper under the evidence and circumstances.

### Count III – No Coverage Based Upon The Prior Knowledge Exclusion

28. Homeland realleges paragraphs 1 through 18 as paragraph 28 of Count III.

29. The Homeland policy does not afford coverage as before the inception date of the Homeland policy, Hippocrates knew or reasonable could have foreseen that the alleged act, error

or omission related to the treatment of Valeria Sfreddo might result in the Sfreddos holding it responsible for those alleged acts or omissions.

30. In view of the foregoing, and actual controversy exists between the parties and by the terms and provisions of 28 U.S.C. §2201, this Court has the power to declare the rights and liabilities of the parties and to give such other relief as may be necessary.

WHEREFORE, Homeland respectfully requests this Court to:

(a) Take jurisdiction of this matter and determine and adjudicate the rights and liabilities of the parties with respect to the Homeland policy;

(b) Find and declare that Homeland has neither a duty to defend or duty to indemnify Hippocrates for the Sfreddo claim;

(c) Grant Homeland such other relief as this Court deems fit and proper under the evidence and circumstances.

Dated: April 18, 2011.

/s/ Ronald L. Kammer
Ronald L. Kammer
Florida Bar No. 360589
rkammer@hinshawlaw.com
Hinshaw & Culbertson LLP
9155 S. Dadeland Boulevard
Suite 1600
Miami, Florida 33156-2741
Telephone: 305-358-7747
Facsimile: 305-577-1063

14505916v1 0917527 54832